**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER  DIVISION**

| | | |
|---|---|---|
| **JAMES S. TAYLOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.  6:07-CV-0111-SLB** |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner** | ) | |
| **of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Plaintiff James S. Taylor brings this action pursuant to 42 U.S.C. § 405(g),[1] seeking review of the Commissioner of Social Security's final decision denying his application for Supplemental Security Income ("SSI").  Upon review of the record and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

**I.  PROCEDURAL HISTORY**

Taylor initially filed an application for SSI benefits on October 21, 2001.  (R.74.)[2] The state agency denied his application, (R.53), and he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 7, 2005.  After the hearing, the

---

[1] The review provisions of 42 U.S.C. § 405(g) apply to claims for SSI benefits.  42 U.S.C. § 1383(c)(3)("The final determination of the Commissioner of Social Security . . . shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 92 (1991).

[2] Citations to the record, "(R.#.)," refer to the administrative record filed by the Commissioner with his Answer, (doc. 11).

ALJ found that – while Taylor was unable to perform any past relevant work – he was capable of making vocational adjustment to other work, such as that of a bench worker, an automated machine tender, or a material handler – vocations that exist in significant numbers in the national economy.  (R.26.)   In light of this finding, the ALJ denied Taylor's request for SSI benefits on August 30, 2005.

Taylor then requested review of the ALJ's decision by the Appeals Council.  (R.13.)  After considering Taylor's contentions, the Appeals Council concluded that no basis existed upon which to review the decision of the ALJ, thus allowing the ALJ's decision to stand as the final decision of the Commissioner.  (R.5.)  Taylor then appealed the final decision of the Commissioner to this court.  (Doc. 1.)[3]  However, before the case could be considered by this court, the Commissioner filed a motion to remand the case pursuant to sentence six of 42 U.S.C. § 405(g),[4] of the Social Security Act, because the recording of Taylor's hearing before

_____

[3]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[4]Sentence 6 of § 405(g) states:

The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings

the ALJ was partially or totally blank, and, therefore, no transcript was available. (Doc. 5.) On July 1, 2008, this court granted defendant's motion and remanded the case to the Commissioner. (Doc. 9.)

After remand, Taylor filed a new application for SSI benefits and the Commissioner found he was disabled as of April 19, 2007.[5] (R.277.) Thus, the Appeals Council directed the ALJ to determine on remand only whether Taylor was disabled prior to April 19, 2007. (R.277.)

The ALJ held a supplemental hearing regarding Taylor's claim on May 5, 2010. (R.762-93) He found that Taylor was not disabled prior to April 19, 2007. (R.289.) Taylor appealed to this court which has jurisdiction over the action pursuant to § 405(g) of the Social Security Act.

## II.  <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court's role is a narrow one:  "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221

---

of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g).

[5]Plaintiff suffered a stroke on or about April 19, 2007.  (*See* R.757.)

(11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cor. 1990)(quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983))(internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. <u>ADMINISTRATIVE REVIEW PROCESS</u>

The Social Security Act and its regulations set out the procedure for determining whether a claimant is eligible for benefits. A claimant first submits an application for benefits to the state agency. The Commissioner makes an initial determination of whether the claimant is disabled. 42 U.S.C. § 1383(c)(1)(A); 20 C.F. R. § 416.1400(a)(1). The initial decision may be reversed by an Administrative Law Judge (ALJ) after a hearing, whose decision may be reversed by the Appeals Council of the Social Security Administration. 42

U.S.C. § 1383(c)(1)(A); 20 C.F.R. § 416.1400(a)(3)-(4).  After exhausting the administrative review process, a claimant may appeal the Commissioner's decision to the federal district court.  42 U.S.C. §1383(c)(3); 20 C.F. R. § 416.1400(a)(5).

## IV.  DISCUSSION

### A.  THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for disability benefits or SSI.  *See* 20 C.F.R. § 416.920(a)(4); *Bowen v. City of New York,* 476 U.S. 467, 470 (1986).  "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for SSI benefits] if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(C)(1).  The specific steps in the evaluation process are as follows:

(1)  The Commissioner must first determine whether the claimant is engaged in "substantial gainful activity".  *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).  The regulations define "substantial gainful activity" as "work activity that is both substantial and gainful."[6]

_____

[6]The regulation also states:

(a)  Substantial work activity.  Substantial work activity is work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less,

20 C.F.R. § 416.972.  If the claimant is working and that work is substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or his age, education, and work experience.  20 C.F.R. § 416.920(b). "Under the first step, the claimant has the burden to show that [he] is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Commissioner of Social Sec.*, No. 11-13878, 2012 WL 399984, *1 (11th Cir. Feb. 9, 2012).

(2)  If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 416.92(c).  "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).  The regulations provide: "if you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do

---

or have less responsibility than when you worked before.

(b)  Gainful work activity.  Gainful work activity is work activity that you do for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c)  Some other activities.  Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 416.972.

basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience." 20 C.F.R. § 416.920©.  "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).  A complainant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985).  A claimant has the burden to show that he has a severe impairment or combination of impairments. *Reynolds-Buckley*, 2012 WL 399984, *1.

(3)  If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the durational requirement and is equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing substantial gainful activity.  *See* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]; *see* 20 C.F. R. § 416.925(a), (c)(5). If the claimant's impairment meets or equals an impairment listed in the regulations, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience.  20 C.F.R. § 416.920(d).  The claimant has the burden of proving that his impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 2012 WL 399984, *1.

7

(4)     If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that his impairment prevents him from performing his past relevant work.  *See* 20 C.F. R. § 416.920(a)(4)(iv).  At this step, the Commissioner "will first compare [his] assessment of [the claimant's] residual functional capacity with the physical and mental demands of [the claimant's] past relevant work.  20 C.F.R. § 416.960(b).  "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [him] to learn to do it.  20 C.F.R. § 416.960 (b)(1).  If the claimant is capable of performing his past relevant work, the Commissioner will find the claimant is not disabled.  20 C.F.R. § 416.920(e).  The claimant bears the burden of establishing that the impairment prevents him from performing past work.  *Reynolds-Buckley*, 2012 WL 399984, *1.

(5)  If the claimant establishes that he is unable to perform his past relevant work, the Commissioner must show the claimant, in light of his RFC, age, education, and work experience, is capable of performing other work that exists in substantial numbers in the national economy.  *Reynolds-Buckley*, 2012 WL 399984, *1; 20 C.F. R. § 416.920(c)(1). The regulations provide:

> If we find that your residual functional capacity is not enough to enable you to do any of your past relevant work, we will use the same residual functional capacity assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work.  We will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of age, education, and work experience.  Any other work (jobs) that you can adjust to must exist in

8

significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F. R. § 416.920(c)(1).  If the claimant is not capable of performing such other work, the Commissioner must find the claimant is disabled.  20 C.F.R. § 416.920(f).

## B.  THE ALJ'S APPLICATION OF THE FIVE-STEP EVALUATION

### 1.  Substantial Gainful Activity

The ALJ found that Taylor had not engaged in substantial gainful activity since October 21, 2003, the date of his initial SSI application.  (R. 279.)  This finding is not challenged herein.

### 2.  Severe Impairments

The ALJ found that Taylor had the following severe impairments prior to April 19, 2007:  degenerative disc disease of the cervical and lumbar spine, adjustment disorder with anxiety and depressed mood, and personality disorder.  (R. 279.)

### 3.  Listing

The ALJ found Taylor did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

### 4. Past Work

The ALJ found that Taylor could perform a limited range of light work,[7] with the

following restrictions:

> He could occasionally lift up to 20 pounds and frequently lift up to 10 pounds, but not
> above shoulder level.  He should be able to sit 6 out of 8 hours with customary breaks
> and [to] stand 4 out of 8 hours, but less than 45 minutes at one time without the ability
> to stand or change position for 1-2 minutes to decrease [the] strain on the back.  He
> should be able to walk 3 out of 8 hours but less than 30 minutes at a time without the
> ability to change position for a couple of minutes.  He should be able to occasionally
> climb stairs, kneel, crouch, and stoop, but not repetitively.  He should avoid ladders,
> unprotected heights, heavy vibratory machinery, or extreme cold exposure.  He has
> unlimited ability to perform fine and gross manipulation except anything that would
> require positioning of the hands above shoulder level . . . .  He is capable of unskilled
> . . . , simple, routine repetitive work requiring only occasional decision-making and
> only a very low stress job.  He would not be [able to meet a required] production
> quota, but would be paid an hourly wage.  He would have only occasional contact
> with coworkers, supervisors, and the public.

---

[7]The regulations describe the physical exertion requirements of "light work" as
follows:

> Light work involves lifting no more than 20 pounds at a time with frequent
> lifting or carrying of objects weighing up to 10 pounds.  Even though the
> weight lifted may be very little, a job is in this category when it requires a good
> deal of walking or standing, or when it involves sitting most of the time with
> some pushing and pulling of arm or leg controls.  To be considered capable of
> performing a full or wide range of light work, you must have the ability to do
> substantially all of these activities.  If someone can do light work, we
> determine that he or she can also do sedentary work, unless there are additional
> limiting factors such as loss of fine dexterity or inability to sit for long periods
> of time.

20 C.F.R. § 416.967(b).

(R. 282.)  Taylor was 42 years old when he filed his application, he has a high school education, and he does not have any transferable job skills from past relevant work.  (R. 287-88.)  The ALJ found that Taylor had "no past relevant work."  (R. 287.)

### 5.  Other Work

Because he found Taylor could not perform a full range of light or sedentary work, the ALJ consulted a Vocational Expert (VE) to determine whether any jobs exist in the national economy that Taylor, considering his age, education, work experience, and RFC, could perform.  The VE testified that an individual with Taylor's limitations, age, education, and experience could perform the jobs of a surveillance system monitor, document preparer, photo machine copier, or coin-machine collector – all jobs that exist in significant numbers in the national economy. (R. 288.)  Based on this testimony, the ALJ found Taylor could perform other work, and, therefore, he found Taylor was not under a disability at any time to April 19, 2007.  (R. 289.)  Accordingly, the ALJ held that Taylor is not entitled to supplemental security income for the time before April 19, 2007.  (*Id*.)

## C.  TAYLOR'S CONTENTIONS

### 1.    Little Weight Given to Clinical Assessments of Treating Physician, Dr. Jeffrey Long

Taylor contends that the ALJ's RFC fails to properly account for all his physical limitations because the ALJ did not give proper weight to the opinion of his treating physician, Dr. Jeffrey Long.  Specifically, Taylor contends that the ALJ improperly rejected Dr. Long's conclusions of his functional limitations based on pain and fatigue as evidenced

by Dr. Long's Clinical Assessment of Pain and Clinical Assessment of Fatigue and Weakness forms.  (Doc. 15 at 17 [citing R. 269, 271-73].)

Taylor argues that these forms should be given great weight as they include conclusions by Dr. Long that Taylor suffered from slow gait and diminished pinprick sensation, migraine headaches, musculoskelatal and neurological abnormalities, and cervical tenderness, spasms, lack of motion, and decreased strength, conditions which "negatively affect his ability to adequately perform activities of daily living or work."  (Doc. 15 at 17.) However, the court finds the ALJ's determination of the weight to give Dr. Long's assessments of Taylor's pain and fatigue are supported by substantial evidence for giving little weight to Dr. Long's conclusions found in these forms.

"An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)(citations omitted).  "The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)(quoting *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981)).  The Eleventh Circuit has stated that "[t]he testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *McGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986.)  To allow this court to review the decision of the ALJ, the

12

Eleventh Circuit requires the ALJ to "specify what weight is given to a treating physician's opinion and any reason for giving it no weight . . . ." *Id.* at 1053. If the ALJ ignores or fails to properly refute a treating physician's testimony, as a matter of law, that testimony must be accepted as true. *Id.* at 1053; *Elam*, 921 F.2d at 1216. This court will not reverse the ALJ's decision regarding the weight given to any physician's testimony if the reasons for the decision are supported by substantial evidence, even if the court disagrees with the decision. *See id.* at 1054.

The ALJ in the present case provided multiple reasons for giving Dr. Long's June 2005 and September 2006 assessments little weight. He explained that, while Dr. Long listed numerous limitations of Taylor's functional ability, Dr. Long had not explained or supported these limitations other than to state that Taylor had suffered two strokes in July and August 2006. (R.286.) The ALJ found, in light of his consideration of the entire record, that the conclusions reached in Dr. Long's 2005 and 2006 assessments are inconsistent with other medical records and had failed to explain how Taylor's impairments caused the limitations. (R.238-44, 286.) The ALJ noted that the medical records showed that Taylor had a transient ischemic attack[8] in July 2006 (TIA), and "there had been no residual deficits due to [the July 2006 TIA and the August 2006 cerebrovascular accident (CVA, or stroke)]" noted in an April 2007, examination following his April 18, 2007 stroke. (R. 281, 286, 757.)

---

[8]"A TIA (transient ischemic attack) is a "warning stroke" or "mini-stroke" that produces stroke-like symptoms but no lasting damage." *Whaley v. Astrue*, No. 3:08cv126/MCR/MD, 2009 WL 700789, *4 (N.D. Fla. Mar. 16, 2009).

The court does not find Long's reference to "two strokes," (doc. 268), as particularly relevant to his credibility. Given the length of the letter, which is very brief, it appears as if both events were referred to as strokes as a matter of shorthand. Also, Dr. Xiaohua Zhou, who treated Taylor after he had the April 2007 stroke, referred to the two events in 2006 as "CVAs." (R.755, 757.) Dr. Zhou states in his notes, "Patient has no residual deficits secondary to [the 2006] strokes." (R.757; *see also* R. 255.) The ALJ did not err in failing to credit Dr. Long's opinion of Taylor's functional limitations resulting from the 2006 mini-stroke and stroke event.

Other evidence in the record supports the ALJ's evaluation of Taylor's limitations. In October 2003, Dr. Benjamin Fulmer, a physician with Birmingham Neurosurgery and Spine Group, examined Taylor and found that, while he complained of neck and back pain, Taylor's motor functioning was normal and he did not require surgery. (R.152-54.) One month later, Dr. Morris saw Taylor and diagnosed him with "probable carpal tunnel syndrome" and "neck pain of uncertain etiology, " but noted that Taylor had 5/5 strength in all groups of motor skills and 2/4 in reflexes. (R.150.) Dr. Morris ordered Taylor to undergo a cervical myelogram and an EMG, and both exams came back normal. (R.150, 157-60.) In June 2004, Dr. Charles Cobbs, a neurosurgeon, examined Taylor and found he had full strength of his motor skills. (R.206.)

In May 2006, Dr. Long diagnosed Taylor with osteoarthritis. An examination a month later by Dr. Rama Pidkit, a pain management specialist, showed that Taylor had normal gait

and station, muscle strength and tone, range of motion, and a lack of tenderness. (R.623.)
After his mini-stroke and stroke in 2006, while Taylor reported feeling weak, the record does
not contain substantial evidence of musculoskeletal abnormality or severe pain. *(See* R.661-
66.)

The court finds that the record contains substantial evidence to support the ALJ's
rejection of Dr. Long's Clinical Assessments of pain and fatigue.

### 2.    Crest Syndrome and Buerger's Disease/Syndrome

Taylor also argues that the ALJ discounted his diagnoses of CREST Syndrome[9] and
Buerger's Disease.[10]    (Doc. 15 at 20-21.)   However, the ALJ noted in his opinion that
according to the record the only symptom Taylor suffered in relation to his October 2006
diagnosis of CREST Syndrome and Buerger's Disease was "bad circulation."  (*See* R.661-
64.)  The ALJ considered Taylor's Crest Syndrome and Buerger's Disease in deciding on an
appropriate RFC; however, he decided that these conditions did not substantially impair
Taylor's inability to work beyond the limitations set forth in the RFC.  Taylor has not

---

[9]"CREST Syndrome is one subtype of scleroderma that results in the hardening of the
skin and can also affect the digestive tract."  *Sublett v. Astrue*, Civil Action File No.
1:09-CV-2302-JFK, 2010 WL 3418331, *5 (N.D. Ga. Aug. 26, 2010).

[10]"Buerger's disease is a vascular disease known as thrombosis angitis obliterans,
which means an inflammation of the blood vessels with thrombosis in the veins and arteries.
It causes blood clots in the veins and arteries and may thus cut off circulation." *Hemingway
v. Ochsner Clinic*, 608 F.2d 1040, 1045 n.3 (5th Cir. 1979).  Buerger's disease is  related to
smoking.  *Bond v. Octagon Process, Inc.*, 745 F. Supp. 710, 710 (M.D. Ga. 1990).

demonstrated otherwise.  The mere diagnosis of a mental or physical condition is not evidence that the condition impairs the claimant's ability to work.  *See, e.g. Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987) (explaining that the mere diagnosis of a disease does not in and of itself evidence why a social security claimant cannot be gainfully employed.)

The court finds the ALJ's decision regarding a lack of an impairment caused by CREST Syndrome or Buerger's disease is supported by substantial evidence.

### 3.  Inconsistencies between the testimony of the Vocational Expert and the DOT

The ALJ relied on the testimony of a Vocational Expert (VE) and the framework of the Medical-Vocational Guidelines to find that Taylor could perform a significant number of jobs in the national economy.  (R.288.)  The VE testified that a hypothetical individual of Taylor's age, education, experience, and RFC could perform sedentary, unskilled jobs of surveillance system monitor, a document preparer, and such unskilled light jobs as a photo machine copier, or a coin-machine collector, all of which include a sit/stand option and exist in substantial numbers in the national economy.  (R. 790.)  When asked by the ALJ how the Dictionary of Occupational Titles [DOT] deals with sit/stand options, the VE responded that "the DOT does not include sit/stand options;" nevertheless, he testified that he had determined the availability of such options in the enumerated jobs from his personal observation and research, as well as from research done by his colleagues.  (R.791.)  The ALJ noted the VE's reliance on such research and observation in his opinion.  (R. 288.)

Taylor argues that the jobs that the ALJ determined he could perform are inconsistent with the description of those jobs in the DOT.  Specifically, he argues that the description of these jobs in the DOT are inconsistent with the VE's testimony because the jobs are not low stress, are not repetitive, require more than occasional contact with other people, and/or require reaching overhead.  (Doc. 15 at 22-23.)  Also, he argues that, under SSR 00–4p, the ALJ was required to ask on the record whether the VE's testimony conflicts with the descriptions of the stated jobs in the DOT and then, if such conflicts exist, the ALJ is required to resolve them before relying on the VE testimony.  *See* SSR 00-4p, *Policy Interpretation Ruling :  Titles II and XVI:  Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, 2000 WL 1898704 (Dec. 4, 2000).

SSR 00-4p provides:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict.  The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

> . . .

17

Reasonable explanations for such conflicts, which may provide a basis for relying on the evidence from the VE or VS, rather than the DOT information, include, but are not limited to the following:

Evidence from VEs or VSs can include information not listed in the DOT. The DOT contains information about most, but not all, occupations. The DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces. The term "occupation," as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs. Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or *from a VE's or VS's experience* in job placement or career counseling.

The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. ***A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT***.

SSR 00-4p at 2-3.  (emphasis added).

While some district courts in the Eleventh Circuit have followed SSR 00-4p, the Eleventh Circuit, in an unpublished opinion, has specifically upheld the precedent, set forth in *Jones v. Apfel*, 190 F.3d 1224 (11th Cir. 1999),[11] that VE testimony trumps the DOT when

_____

[11]The *Jones* decision held:

[W]hen the VE's testimony conflicts with the DOT, the VE's testimony "trumps" the DOT. We so hold because the DOT is not the sole source of admissible information concerning jobs. The DOT itself states that it is not comprehensive. It provides occupational information on jobs in the national economy, and it instructs DOT users demanding specific job requirements to supplement the data with local information detailing jobs within their community. Additionally, the Code of Federal Regulations states that the SSA will take administrative notice of reliable job information available from various governmental and other publications, such as the DOT. *See* 20 C.F.R.

the two conflict.  *Miller v. Commissioner of Social Sec.*, 246 Fed. Appx. 660, 661-62 (11th Cir. 2007)(stating that agency rulings are not binding on the court and holding that even assuming inconsistencies did exist among VE testimony and the DOT, "[Eleventh Circuit] precedent establishes that the testimony of a vocational expert "trumps" an inconsistent provision of the DOT"); *see, e.g. Bailey v.* Astrue, 739 F. Supp. 2d 1365, 1381 (N.D. Ga. 2010)("the Eleventh Circuit has explicitly held in an unpublished decision that the *Jones* case remains binding law in this Circuit because Social Security Rulings do not bind courts and do not have the force of law."); *Leonard v.* Astrue, No. 2:08-cv-871, 2010 WL 338099, *5 (M.D. Fla. Jan. 22, 2010)(stating that *Jones* remains the law in the Eleventh Circuit).

        In this case, the ALJ relied on the VE's testimony to establish that Taylor could perform these jobs.  According to Eleventh Circuit precedent, the ALJ could rely on this

----

        § 404.1566(d)(1) [20 C.F. R. § 416.967(d)(1) for SSI benefit claims].  By this wording, the SSA itself does not consider the DOT dispositive.

                As noted in the DOT, the ALJ should supplement the DOT data with local information detailing jobs in the regional community.  The VE provides this vital information.  In this case, the VE testified that he compiled the employment information from a personal survey, contact with employers and other VEs and a survey of literature such as census reports and county business patterns.  As such, we conclude that the VE's testimony is crucial to an ALJ's determination at step 5 of the sequential evaluation process.  Due to the significance of the VE's testimony, we . . . hold that an ALJ may rely solely on the VE's testimony.

*Jones*, 190 F.3d at 1229-30 (internal citations and quotations omitted).

testimony.  Therefore, the court finds the ALJ's decision that Taylor can perform other work is due to be affirmed.

Assuming that SSR 00-4p applies in those situations where the DOT is inconsistent with the VE's testimony, the court find that the positions of photocopying-machine operator and coin-machine collector as described in the DOT are consistent with the VE's testimony.[12] Taylor alleges that "there is no evidence that Taylor, who cannot reach above shoulder level, can perform this work."  (Doc. 15 at 23.)  The description of the job of photocopying-machine operator states:

> Tends duplicating machine to reproduce handwritten or typewritten matter: Places original copy on glass plate in machine.  Places blank paper on loading tray.  Sets control switch for number of copies.  Presses button to start machine which transfers image of original copy onto blank paper by photographic and static electricity process.  May clean and repair machine.  May receive payment for duplicate copies.  Important variables may be indicated by trade name of machine tended.

(Doc. 15-3 at 1.)  The job requirements described by the DOT do not require lifting above shoulder height for an average size man such as Taylor.  (*See* R.710 [Taylor is 5'10" tall].)

---

[12]The court notes that the DOT describes the position of surveillance-system monitor as requiring a significant amount of contact with people.  (Doc. 15-1 at 2, 3.)  Therefore, the DOT description is inconsistent with the VE's testimony that someone like Taylor, who required a position with only occasional contact with people, could perform this job.  (*See* R. 777, 783, 790.)  Also, the position of "document preparer, microfilming," requires the performance of a variety of duties.  (Doc. 15-2 at 1-3.)  The description is inconsistent with the VE's testimony that someone like Taylor, who required repetitive work, could perform this job.  (*See* R. 783, 790.)  These inconsistencies were not explained.

Similarly, the DOT job description for coin-machine collector does not require lifting above shoulder height for an average size man.  (Doc. 15-4 at 1.)  That description states:

> Collects coins or coin boxes from parking meters or telephone pay stations:  Unlocks telephone faceplate and removes box containing money.  Inserts empty box and locks faceplate.  Tag boxes to identify pay stations.  Reports malfunctioning telephones or parking meters to repair department.  Delivers boxes to central depot for machine counting, tabulating, and customer payment.  May count coins and compute amount due subscriber, according to difference between minimum guaranteed rate and total case in box.  May pay subscriber percentage refund.  May adjust or repair parking meters using handtools.  May keep records of collections, balances due, and refunds.  . . .

(Doc. 15-4 at 1.)

Notwithstanding Taylor's argument to the contrary, the court finds no inconsistency between the DOT job descriptions for photocopying-machine operator and coin-machine collector and the VE's testimony that someone like Taylor, who is unable to reach above shoulder height, could perform those jobs.

Based on the foregoing, the decision of the ALJ, adopted by the Commissioner, is due to be affirmed.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be affirmed.   An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 16th day of March, 2012.


SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE